**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sam Sutton, | No. CV-20-02320-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Shasta Industries Incorporated, | |
| Defendant. | |

The Court is in receipt of Defendant Shasta Industries, Inc.'s ("Shasta") Motion to Dismiss. (Doc. 8.) Plaintiff Sam Sutton ("Sutton") responded, (Doc. 22), and Shasta replied. (Doc. 23.) Shasta requested oral argument, but the Court declines to hold oral argument finding that it is unnecessary. *See* LRCiv 7.2(f). The Court has reviewed the pleadings, exhibits, and relevant law and issues this order granting Shasta's motion.

## I.    BACKGROUND

This case comes before the Court after several related state court proceedings and concerns a decade long dispute between Sutton and Shasta centered around a patent known as the "PPRP Patent." Sutton filed a Complaint with this Court for alleged patent infringement related to the PPRP patent arising under 35 U.S.C. § 271. (Doc. 1.) The Complaint alleges that Shasta infringed the PPRP patent, which was owned by Sutton, during the "Period of Infringement" of February 2014 through October 2019. (Doc. 1 ¶ 78.) The Complaint alleges that Sutton's co-owner of the PPRP patent expressly assigned him the right to sue for and collect past damages for infringement of the PPRP patent. (*Id.*

¶ 38.) It also alleges that thereafter, Shasta paid Sutton and his co-inventor $450,000 for assignment of the PPRP patent without any assignment of the right to sue for past infringement. (*Id.*) Sutton now files this lawsuit alleging that Shasta infringed the PPRP patent from February 2014 through October 2019.

Shasta previously filed suit against Sutton in Maricopa County Superior Court, No. CV 2016-002714, which culminated in Shasta obtaining a temporary restraining order and preliminary injunction against Sutton, his son, and his business, Aspen Research, Ltd. ("Aspen"). The preliminary injunction prohibited Sutton, his son, and Aspen from communicating with Shasta's customers and distributors and from using the technologies covered by the PPRP patent. *Shasta Indus., Inc. v. Sutton*, No. 1 CA-CV-17-0063, 2018 WL 3387320, at *2 (Ariz. Ct. App. July 12, 2018). The preliminary injunction was affirmed by the Arizona Court of Appeals. *Id.* at *4. On September 26, 2019, Aspen, Sutton, and Shasta executed a Rule 80(a) Settlement Memorandum, in which Shasta agreed to pay Sutton and his son a sum of money for the transfer of the PPRP patent to Shasta. (Doc. 8-1 at 30.) The parties agreed that the settlement agreement would include a full release. (*Id.* at 31.) On November 25, 2019, the parties executed a Settlement Agreement and Mutual Release and Patent Assignment. (Doc. 8-1 at 33-38, 50-52.)

On January 4, 2021, this Court issued an order granting Shasta's request for a preliminary injunction against Sutton. (Doc. 18.) The order enjoined Sutton from (1) publicly disseminating any statements regarding Shasta's purported infringement of patents, including but not limited to the PPRP Patent, and (2) from engaging in any other activities that would constitute a breach of the parties' settlement agreement. (*Id.* at 6.) In reaching this conclusion, the Court evaluated Shasta's likelihood of success on the merits for its claim. The Court determined, "[Shasta] is likely to be successful on its claim that [Sutton] no longer retains any rights in the PPRP Patent, including the right to sue for past infringement because such rights were either extinguished by the parties['] settlement or assigned with the patents." (*Id.* at 3.) The Court reasoned, "[T]he Patent Assignment, when read in context of the Rule 80 Settlement Agreement (Exhibit 6), Settlement Agreement

1   and Mutual Release (Exhibit 7) and email between counsel (Exhibit 16), demonstrates an

2   intent to transfer all rights, including the right to sue for past infringement." (*Id.* at 5.)

3   **II.   LEGAL STANDARD**

4       **A. Standing**

5       The Constitution limits federal court jurisdiction to "Cases" and "Controversies."

6   U.S. Const. art. III § 2; *Raines v. Byrd*, 521 U.S. 811, 818 (1997). To show that a case or

7   controversy exists, a plaintiff must establish that he has standing to bring suit. *Lujan v.*

8   *Defs. Of Wildlife*, 504 U.S. 555, 560–61 (1992). A plaintiff must satisfy three elements to

9   establish Article III standing: (1) an injury in fact, (2) a causal connection between the

10  injury and the allegedly wrongful conduct, and (3) that the injury is likely to be redressed

11  by a favorable decision from the Court. *Id.* In addition, when a plaintiff "seeks declaratory

12  and injunctive relief only, there is a further requirement that [the plaintiff] show a very

13  significant possibility of future harm." *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d

14  1121, 1126 (9th Cir. 1996). "Since they are not mere pleading requirements but rather an

15  indispensable part of the plaintiff's case, each element must be supported…with the manner

16  and degree of evidence required at the successive stages of the litigation." *Defs. Of Wildlife*,

17  504 U.S. 555, at 561 (1992) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883-889

18  (1990)). Thus, "at the pleading stage, general factual allegations of injury resulting from

19  the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general

20  allegations embrace those specific facts that are necessary to support the claim.'" *Id.*

21  (quoting *Nat'l Wildlife Fed'n*, 497 U.S. at 889.) "A suit brought by a plaintiff without

22  Article III standing is not a 'case or controversy,' and an Article III federal court therefore

23  lacks subject matter jurisdiction over the suit," and "the suit should be dismissed under

24  Rule 12(b)(1)." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (citations

25  omitted).

26      **B. Rule 12(b)(6)**

27      To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet

28  the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the

claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

## III.    DISCUSSION

The primary issue of this motion is whether Sutton assigned his right to sue for past infringement of the PPRP patent when he executed the Rule 80 Settlement Memorandum, Settlement Agreement, and Patent Assignment assigning his right in the PPRP patent to Shasta in 2019. In deciding the issue, the Court may properly consider the settlement documents and patent assignment attached to Defendants' Motion to Dismiss. A court may consider evidence on which a complaint necessarily relies if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citations omitted). "The court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)). Here, all three elements are satisfied.[1] Accordingly, the Court will treat such documents as a part of the Complaint and consider them in ruling on this motion.

### A. Standing

Defendants first argue that Sutton lacks standing to pursue his infringement claims. Only a "patentee" has a civil remedy for infringement of his patent. 35 U.S.C. § 281. A patentee includes the patentee to whom the patent was issued and successors in title to the patentee. 35 U.S.C. § 100(d). "'[T]he plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit' to assert standing." *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010) (*Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309-10 (Fed. Cir. 2003)).

Defendant argues, "In the face of the broad language of the Patent Assignment, Settlement Agreement, and Rule 80(a) Settlement Memorandum," Sutton assigned the entire right in the PPRP patent to Shasta including the right to sue for past infringement. Plaintiff conversely argues that although there was a patent transfer, there was no assignment of the right to sue for past infringement exchanged during the settlement and

---

[1] Additionally, Sutton concedes that the Rule 80(a) Settlement Memorandum, the Settlement Agreement, and the Patent Assignment may be considered because the documents are relied on by the Complaint.

patent transfer, and assignment of Plaintiff's right to sue cannot be lawfully inferred from assignment of title to the PPRP Patent. In support of his position, Plaintiff cites to *Moore v. Marsh*, a U.S. Supreme Court case from 1868. 74 U.S. 515, 521 (1868) ("Subsequent sale and transfer of the exclusive right are no bar to an action to recover damages for an infringement committed before such sale and transfer."). Defendant argues that, more recently, courts have noted that statue and common law precedent does not require "a particular formula or set prescription of words to express that conveyance." *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1117 (Fed. Cir. 1996).

The absence of "magic words" – "I hereby assign the right to sue for past infringement" – does not necessarily mean that the right to sue for past infringement has not been conveyed. *Id.* at 216. "Determining whether the right to sue for past infringement has been transferred turns on the proper construction of the assignment agreements, which is a matter of state contract law." *Id.* The parties' Settlement Agreement purports to be governed by Arizona law. (Doc. 8-1 at 36, ¶ 14.) Pursuant to Arizona contract law, courts should seek "to discover and effectuate the parties' expressed intent." *Terrell v. Torres*, 248 Ariz. 47, 49 (2020) (citing *Taylor v. State Farm Mutual Auto. Ins. Co.*, 175 Ariz. 148, 152 (1993)). Provisions are construed according to their plain and ordinary meaning, and courts consider a provision's meaning in the context of the entire contract. *Id.* at 50 (citations omitted).

Reviewing the language in the Settlement Memorandum, Settlement Agreement, and Patent Assignment at issue in this case, it is clear that the parties' intended to transfer the right to sue for past infringement during the patent transfer in this case. The Settlement Memorandum states, "Defendants will execute assignments of the three patents at issue within 10 days of this agreement, *fully assigning any and all ownership and/or rights* in these patents to Shasta Industries, Inc. …" (Doc. 8-1 at 31, ¶ 5 (emphasis added).) The "Recitals" section of the Settlement Memorandum further supports this conclusion. That section states, "The purpose of this agreement is to settle all claims that have been or could have been made in the legal action pending in the Superior Court of Maricopa County,

Arizona …" (Doc. 8-1 at 33.) Lower in the "Recitals" section, its states, "The Parties desire to fully and finally settle the Lawsuit, including any and all claims that have or could have been brought by one party against the other Party …" (Doc. 8-1 at 33.) In paragraph 3, "Patent Transfers," the Settlement Agreement states, "The Assignment of Patents, attached as Exhibit 1, shall be executed by Sam, Jepson, and Aspen, and shall fully transfer and assign to Shasta *full rights, title, and ownership interest* to the Patents, as well as to any and all other issued patents ..." (Doc. 8-1 at 34, ¶ 3 (emphasis added).) Later in the same paragraph, the agreement reads, "Subject to full and final performance of Shasta's payment obligation under Paragraph 2, Sam, Jepson, and Aspen forever release and *waive any and all rights, claims, or ownership interests* purportedly arising out of or relating to the two patent Assignment Agreements from Shasta to Aspen dated July 9, 2008, January 21, 2010." (*Id.* (emphasis added).) Under the "Continued Cooperation" paragraph, the Settlement Agreement states that Sutton, his son, and his company would cooperate in signing any documents "legally required to evidence assignment of *all their rights* in the Patents to Shasta." (Doc. 8-1 at 34, ¶ 4 (emphasis added).) The Patent Assignment states, "Assignors hereby assign to Assignee their *entire right, title and interest in and to the Patents*." (Doc. 8-1 at 50, ¶ 1 (emphasis added).) Further, the Settlement Agreement contained a broad release. The release states in pertinent part that the releasing parties:

> hereby absolutely, forever and fully, generally and specifically, release and discharge each other and each of their respective present and former agents, associates independent contractors, employees, employers, directors, officers, shareholders, partners, members, joint venturers, corporations (including, but not limited to, attorneys' fees), liens, subrogation rights, indemnification rights, damages, losses, actions, and causes of action, of any kind whatsoever that have been or could have been asserted in the Lawsuit (hereinafter referred to as "Claims"), whether due or owing in the past, present or future and whether based upon contract, tort, statute or any other legal or equitable theory of recovery, and whether known or unknown, suspected or unsuspected, fixed or contingent matured or unmatured with respect to, pertaining to, or arising from any matters, acts, omissions, events, conduct circumstances or occurrences at any time prior to the date of this Agreement including, without limiting the generality of the foregoing

provisions, *any and all causes of action or Claims arising from the Patents and/or the Lawsuit* but excluding any claim based upon Shasta's warranty of any Party's swimming pool

(Doc. 8-1 at 34-35, ¶ 6 (emphasis added).)

Sutton counters by arguing that the release between the parties was narrowly drafted to be strictly limited to claims that could have been filed in the state court action instituted by Shasta. (Doc. 22 at 8-9.) Further, he argues that state courts do not have jurisdiction over claims arising from any Act of Congress related to patents. *See* 28 U.S.C. § 1338(a). However, this argument does not comport with the language of the Settlement Agreement, which released "any and all causes of action or Claims arising from the Patents and/or the Lawsuit …" (Doc. 8-1 at 35, ¶ 6.) Thus, this argument fails.

Sutton urges the Court to consider evidence outside of the Complaint and the contract documents to find that the parties did not intend for the right to sue for past infringement to transfer from Sutton to Shasta. Specifically, Sutton argues that Shasta had actual knowledge of the claims for past infringement and intentionally left any language about past infringement out of the settlement documents. He also argues that Shasta's counsel's objection on privilege grounds to the question of whether he had discussed claims for past infringement with his client at the preliminary injunction hearing on December 18, 2020 evidence that Shasta's counsel did in fact discuss the topic with Shasta. However, this evidence is not included in the Complaint or incorporated into the agreement and the Court will not consider it. In addition, as long as terms of a contract are not ambiguous, "[a]ll prior negotiations between the parties, as well as drafts of their proposed agreement, are inadmissible under the parol evidence rule." *United California Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 268 (Ct. App. 1983). Since the Court finds that the language of the agreement is unambiguous, the Court will also not consider any such evidence offered by Sutton.

Considering the parties' intent in the context of the Rule 80 Settlement Memorandum, Settlement Agreement, and Patent Assignment, the Court finds that the

parties intended for the right to sue for past infringement to pass to Shasta with the transfer of the PPRP patent. Accordingly, because the Court finds that the documents evidence the parties' intent to transfer all ownership interests, including the right to sue for past infringement, Sutton lacks standing to bring lawsuit for the Period of Infringement in his Complaint, and his suit must be dismissed pursuant to Rule 12(b)(1).

### B. Rule 12(b)(6)

Shasta also argues that dismissal is appropriate under Rule 12(b)(6) because the release encompasses the claims asserted in the Complaint. If a release bars claims being brought in a complaint, the Court should dismiss the claims pursuant to Rule 12(b)(6). *See Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005 (9th Cir. 2012) (affirming a district court's dismissal of claims pursuant to Rule 12(b)(6) on the basis that the claims were precluded by a covenant not to sue in a prior settlement); *Marder v. Lopez*, 450 F.3d 445, 453 (9th Cir. 2006) (affirming the district court's dismissal of claims which were barred by a release). Shasta points to language in the release stating that the Suttons and Aspen released Shasta from "any and all causes of action or Claims arising from the Patents and/or the Lawsuit …" (Doc. 8-1 at 35, ¶ 6.) Based on the language of the release, Shasta argues that Sutton's claims are barred as a matter of law and should be dismissed pursuant to Rule 12(b)(6).

The Court agrees with Shasta's argument. The language of the release, examined pursuant to Arizona contract law, clearly bars Sutton from bringing any and all causes of action arising from the PPRP patent. *See Terrell*, 248 Ariz. at 49-50 (stating that provisions are construed according to their plain and ordinary meaning, and courts consider a provision's meaning in the context of the entire contract). Accordingly, the Court finds that Sutton's claims should also be dismissed pursuant to Rule 12(b)(6) because the plain language of the release, when examined in the context of the entire settlement document, evidences an intent to release claims for past patent infringement.

### C. Attorney's Fees and Costs

Shasta requested that the Court award its fees and costs if its motion prevailed.

1    Sutton did not advance any arguments on this issue. The Court has determined that fees

2    should be awarded based on the terms of the Settlement Agreement. The Settlement

3    Agreement, in the "Attorneys' Fees and Costs" paragraph, provides: "In the event of

4    litigation or other proceedings brought by any Party under this Agreement or in connection

5    with this Agreement, the prevailing Party, in addition to any and all other rights and

6    remedies, shall be entitled to recover all of its or his costs of litigation, including but not

7    limited to expert fees, reasonable attorney's fees and costs." (Doc. 8-1 at 36, ¶ 18.)

8    Interpreting this term under Arizona law, construing the provision pursuant to its ordinary

9    meaning and attempting to effectuate the parties' expressed intent, *Terrell*, 248 Ariz. at 49-

10   50*, the Court finds that this litigation is "in connection with" with the Settlement

11   Agreement. "In connection with" is necessarily a broad term that intends to encompass any

12   related action, and this litigation certainly implicates the Settlement Agreement. Therefore,

13   the Court will allow Shasta to collect its costs and attorneys' fees from this litigation. The

14   Court directs Shasta to file a motion for attorney's fees and costs with the Court within

15   thirty (30) days of the issuance of this Order.[2]

16   **D. Request to Strike Complaint**

17   Lastly, Shasta requests that the Court order the Complaint to be stricken. The

18   "Mutual Non-Disparagement" clause of the Settlement Agreement states, "Each Party

19   agrees to refrain from making any disparaging or defamatory communications to any

20   person relating to any other Party's involvement in or connection with [*sic*] the Lawsuit,

21   or his or its actions or performance in connection with any other business activity." (Doc.

22   8-1 at 35, ¶ 11.) However, Shasta provides no legal authority authorizing the Court to strike

23   Sutton's Complaint. Accordingly, the Court will deny Shasta's request to strike the

24   Complaint.

25   **IV.   CONCLUSION**

26   The Court finds that Sutton's Complaint should be dismissed pursuant Rules

27   _____

28   [2] Because the Court has decided that attorneys' fees and costs should be awarded pursuant
     to the terms of the Settlement Agreement, it need not address Shasta's argument that the
     same should also be awarded pursuant to A.R.S. § 12-341.01(A).

12(b)(1) and 12(b)(6). Because amendment to the Complaint would be futile, it is dismissed with prejudice. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (a district court should grant leave to amend unless it determines that the pleading cannot be cured by the allegation of other facts).

Accordingly,

**IT IS ORDERED** that Shasta's Motion to Dismiss, (Doc. 8), is granted with prejudice.

**IT IS FURTHER ORDERED** that Shasta file a motion for attorneys' fees and costs with this Court within thirty (30) days.

Dated this 19th day of August, 2021.

Honorable Susan M. Brnovich
United States District Judge

- 11 -